UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 12-62097-CIV-DIMITROULEAS/SNOW

WI-LAN INTERNATIONAL TAIWAN, INC.,

    Plaintiff,

- vs -

HON HAI PRECISION INDUSTRY CO.,
LTD.,

    Defendant.
_____/

**DEFENDANT HON HAI PRECISION INDUSTRY CO., LTD.'S
OPPOSITION TO MOTION TO REMAND TO STATE COURT**

Defendant Hon Hai Precision Industry Co., Ltd. ("Hon Hai") opposes Plaintiff Wi-LAN International Taiwan, Inc.'s ("Wi-LAN") Motion to Remand Action to State Court (D.E. 18) ("Remand Motion").

**I.     Introduction**

Wi-LAN's Motion to Remand is based upon hypotheticals and counter-factuals, rather than the contract that actually is in dispute. While a dispute over a patent license does not necessarily involve a substantial question of patent law, *this* dispute over *this* patent license does. While a patent license need not define the royalty base in terms of products that practice the patent, *this* patent license does. Because resolution of Wi-LAN's breach of contract claim would necessarily require the determination of whether Hon Hai's products practice the licensed patent, this Court has subject matter jurisdiction, and the Motion to Remand should be denied.[1]

---

[1] Even under Wi-LAN's erroneous and unreasonable interpretation of the contract, resolution of the breach of contract claim would still require the determination of a substantial question of

II.     **Standard Governing Motions to Remand**

While federal question jurisdiction generally is based upon the face of a plaintiff's complaint, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." Rivet v. Regions Bank, 522 U.S. 470, 475 (1998) (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 22 (1983)).  Thus, where a "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law," the cause of action arises under the federal patent laws and federal jurisdiction is appropriate.  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988). Infringement is a substantial enough question of patent law to provide federal jurisdiction.  See Hunter Douglas, Inc., v. Harmonic Design, Inc., 153 F.3d 1318, 1330 (Fed. Cir. 1998).

III.    **Statement of Facts Establishing Federal Question Jurisdiction**

Hon Hai entered into a License Agreement with Wi-LAN effective January 22, 2008 ("V-Chip Agreement").[2]  The V-Chip Agreement obligated Hon Hai to pay royalties "for each V-Chip Receiver made by or on behalf of [Hon Hai] and which is sold in the [United States]."  D.E. 8 at §3.1(a).

The V-Chip Agreement states:

> "V-Chip Receiver" means any television receiver (with or without a display) **which utilizes any aspect of, or the use of which is within the scope of, the ['402] Patent and**, without limitation, a VChip Receiver is a receiver capable of: (1) blocking programming in accordance with 47 CFR 15.120(e), as amended; and (2) receiving a transport stream, which includes program rating system information, such as, by way of example only and without limitation, an ATSC signal such as any digital television receiver, set-top box, DVD recorder, desktop or notebook computer or other digital products containing an ATSC tuner.

---

federal law, and thus the Court would still have subject matter jurisdiction.  See infra Section IV.B.

[2]  The License Agreement (D.E. 8) was filed under seal with the Court's permission.  D.E. 9.

D.E. 8 at §1.1 (emphasis added).

Although Wi-LAN's First Amended Complaint (D.E. 16) contains only a portion of the definition of V-Chip Receiver, the Court should consider the complete definition of V-Chip Receiver. See Gross v. White, 2009 WL 2074234 at *4 (11th Cir. 2009) (where exhibits to a complaint contradict the allegations, the exhibits are controlling). Thus, Wi-LAN's claim for breach of contract must be based upon the actual definition of V-Chip Receiver found in the agreement, not on Wi-LAN's limited quotation.

## IV. Argument

### A. Wi-LAN Must Show That Hon Hai Products Infringe the '402 Patent

The elements for a breach of contract claim under New York law are: 1) the existence of a contract; 2) plaintiff's performance under the contract; 3) defendant's breach of that contract; and 4) resulting damages. Harris v Seward Park Hous. Corp., 79 AD3d 425, 426, 913 N.Y.S.2d 161 (N.Y. 2010). Thus, Wi-LAN must show that Hon Hai had an obligation under the license Agreement that Hon Hai failed to perform. Since the license only obligates Hon Hai to pay royalties on "V-Chip Receivers," Wi-LAN must show that Hon Hai has sold V-Chip Receivers in the United States.

#### 1. The Plain Language of the License Agreement Requires a Showing of Infringement

The definition of "V-Chip Receiver" in the License Agreement unambiguously requires royalty payments only for products that fall within the scope of the '402 patent. The very first sentence of the definition of V-Chip Receiver in the License Agreement makes clear that the definition is tied to the '402 Patent.

> "V-Chip Receiver" means any television receiver (with or without a display) **which utilizes any aspect of, or the use of which is within the scope of, the ['402] Patent and**, without limitation, a VChip Receiver is a receiver capable

>of: (1) blocking programming in accordance with 47 CFR 15.120(e), as amended; and (2) receiving a transport stream, which includes program rating system information, such as, by way of example only and without limitation, an ATSC signal such as any digital television receiver, set-top box, DVD recorder, desktop or notebook computer or other digital products containing an ATSC tuner.

D.E. 8 at §1.1 (emphasis added).

Thus, the License Agreement establishes two requirements for a device to be a V-Chip Receiver: first, it *must* utilize or be within the scope of the '402 Patent; and second, it must be capable of blocking programming in accordance with 47 CFR 15.120(e) and receive a transport stream which includes program rating system information. To determine whether a product utilizes or falls within the scope of the '402 Patent thus necessarily requires a determination of whether the product infringes the '402 Patent.

When a cause of action requires proof of infringement, the case arises under the federal patent laws and removal is appropriate. See, e.g., Scherbatskoy v. Halliburton Co., 125 F.3d 288, 291 (5th Cir. 1997) ("Clearly, determining whether Smith International infringed the Scherbatskoys' patents is a necessary element to recovery of additional royalties or a finding that Halliburton breached the Patent License Agreement"); Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc., 986 F.2d 476, 479 (Fed. Cir. 1993) (affirming removal where state law claim for business disparagement required proof that products did not infringe a patent); Kleinerman v. Luxtron Corp., 107 F.Supp.2d 122, 124 (D. Mass. 2000) (denying remand where breach of contract claim required a determination of infringement); Regents of the Univ. of Minn. v. Glaxo Wellcome, Inc., 58 F.Supp.2d 1036, 1038 (D. Minn. 1999) (same); see also U.S. Valves, Inc. v. Dray, 190 F.3d 811, 814 (7th Cir. 1999) (breach of contract claim arose under patent laws because contract issue depended on whether licensor sold valves which infringed on the licensed patents, such that patent law was necessary element of contract claim).

Wi-LAN now tells the Court that the word "and" in the definition of V-Chip Receiver should be read to mean "or."  Wi-LAN did not explain this reinterpretation of the License Agreement in its Amended Complaint, nor did it plead any facts that would support it.  Indeed, Wi-LAN could not explain its position because it omitted the first part of the definition of V-Chip Receiver in its entirety.  That omission is precisely the type of artful pleading that the Supreme Court explained cannot be used to defeat federal jurisdiction.  See Rivet v. Regions Bank, 522 U.S. at 475.

### 2. The License Agreement Should Not Be Construed Contrary To Its Ordinary Meaning

Now that Wi-LAN has been forced to admit that its case turns upon a rewriting of the actual language of the License Agreement, it offers two justifications for its position, neither of which withstand scrutiny.  First, Wi-LAN contends that courts have sometimes interpreted the word "and" to mean "or."  The ordinary meaning of "and" is the conjunctive.  See RPS Props., LLC v. Performance Props., Inc., 2005 N.Y. Misc. LEXIS 2571 at *5 (N.Y. Civ. Ct. 2005).  Wi-LAN must show that the contractual language is ambiguous on its face before the Court could even consider giving "and" anything other than its ordinary meaning.  See Brad H. v City of N.Y., 17 N.Y.3d 180, 186 (2011).  Wi-LAN has not demonstrated any inherent ambiguity in the contract language, and mere attorney argument for a different interpretation cannot meet this requirement.  "[T]he language of a contract is not ambiguous simply because the parties urge different interpretations." Major Oldsmobile, No. 93 CIV. 2189 (SWK), 1995 WL 326475, at *5 (quoting Seiden Ass'n., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 426 (2d Cir. 1992).

Moreover, the cases cited by Wi-LAN are inapposite to this case, as the reinterpretation of "and" in those cases was necessary to avoid an "unreasonable result." Noell v. Am. Design, Inc., 764 F.2d 827, 833 (11th Cir. 1985); see also Major Oldsmobile, Inc. v. General Motors

Corp., No. 93 CIV. 2189 (SWK), 1995 WL 326475, at *5 (S.D.N.Y. May 31, 1995) (an alternative interpretation of the contract language would be "unreasonable"); Peacock v. Lubbock Compress Co., 252 F.2d 892, 894 (5th Cir. 1958) (the literal interpretation of the statutory language was "highly improbable"). Giving "and" its ordinary, conjunctive meaning in the License Agreement here would not lead to any unreasonable result, and Wi-LAN has offered none.

Unlike the cases relied upon by Wi-LAN, the relevant principle here is the "long and well-established rule of construction…that words are to be given their ordinary meaning." Maxwell v. State Farm Mut. Auto. Ins., 92 A.D.2d 1049, 1050 (N.Y. App. Div. 1983).

Second, Wi-LAN argues that patent licenses do not need to be limited to infringing products. However, the fact that a license agreement could have been drafted without reference to infringement of the '402 Patent does not mean that *this* license actually was. In the cases relied upon by Wi-LAN, the license agreements did not reference the licensed patents in defining the product that were subject to a royalty. See, e.g., Info-Hold, Inc. v. Sound Merchandising, Inc., 538 F.3d 448, 453 & n.2 (6th Cir. 2008) (containing no reference to the patent in the definition).

By contrast, here, the definition of V-Chip Receiver in the V-Chip Agreement not only contains a reference to the '402 Patent, it actually begins by relating the definition to the scope of the '402 Patent. (""V-Chip Receiver" means any television receiver (with or without a display) **which utilizes any aspect of, or the use of which is within the scope of, the ['402] Patent and**….") (emphasis added). In cases in which the royalty base is defined by products that use a licensed patent, a determination of patent infringement is a necessary predicate to determine if royalties are due under the License Agreement. See, e.g., Kleinerman v. Luxtron Corp., 107

F.Supp.2d 122, 124 (D. Mass. 2000) (infringement determination necessary where license permitted licensee "to make and sell products incorporating the technology"); <u>Regents of the Univ. of Minn. V. Glaxo Wellcome, Inc.</u>, 58 F.Supp.2d 1036, 1038 (D. Minn. 1999) ("infringement is a necessary precursor to a finding that defendant has breached the parties license agreement").

Moreover, the rationale underlying the use of business terms to define the royalty rate in license agreements undermines Wi-LAN's position. As Wi-LAN noted in its brief, the reason for using such terms is to avoid the need to determine infringement on a product by product basis. D.E. 18 at 11. In the present case, however, Wi-LAN is arguing that the first portion of the V-Chip Receiver definition, which would require an infringement analysis, is an independent basis for finding a royalty is due. Thus, the "general description of the products…to be covered" in the second clause would not avoid the need to determine infringement, since infringement would be (according to Wi-LAN's position) a separate basis for requiring a royalty under the V-Chip Agreement. This demonstrates that Wi-LAN's position in *this* specific case is unreasonable, even if it might make sense in other cases with different license agreements at issue.

Indeed, Wi-LAN itself has a history of licensing the '402 patent based on a product definition limited to products that fall within the scope of the '402 patent. See <u>Wi-LAN v. LG Elecs.</u>, Case No. 10-cv-432, Report and Recommendations at 20-21 (S.D.N.Y. Aug. 2, 2011). Given its own licensing history, it is disingenuous for Wi-LAN to suggest that because some other patent licensors sometimes define products without reference to the patent being licensed in their licenses, Wi-LAN did so in its agreement with Hon Hai. Like Hon Hai, LG took the position that because its products are not within the scope of the '402 patent, it owes no royalties

under its license with Hon Hai. Id.

### 3. Any Ambiguity Wi-LAN Attaches to The Word "And" Must Be Resolved Against Wi-LAN, and The Contract Must Be Interpreted Consistent With the Parties' Intent

Wi-LAN attempts to circumvent the ordinary meaning of the contract by arguing that there is some ambiguity in the License Agreement centered on the word "and." As set forth above, that argument has no support in the context of this License Agreement, and Wi-LAN offers no supporting evidence. But, even if the Court were to consider Wi-LAN's argument, it could not succeed as a matter of law.

First, even if the term "and" is considered ambiguous (which it is not), such that this Court could construe it to have other than its ordinary meaning, it was Wi-LAN that proposed to add the word "and" to the definition of V-Chip Receiver. Compare Ex. A at §1.1 (Hon Hai Dec 3, 2007 email draft) with Ex. B at §1.1 (Wi-LAN Dec. 12, 2007 email draft).[3] Accordingly, "the rule of construction that ambiguities in contracts must be construed against the drafter is applicable." Guardian Life Ins. Co. v. Schaefer, 70 N.Y.2d 888, 890 (1987) (citing Killian v. Metropolitan Life Ins. Co., 251 N.Y. 44 (1929)). Any ambiguity must be construed against Wi-LAN.

Second, the intent of the parties, as expressed in contemporaneous communications, was to license products which actually infringed the '402 Patent. See Ex. C (Oct. 15, 2007 email) ("███████████████████████████████████████████████████████████████████████████████████████████████████████████████████")[4] (emphasis added).

---

[3] **A and B** as described above are attached hereto and incorporated herein by reference. Exhibits A and B will be filed with this Court under seal.

[4] **Exhibit C** as described above is likewise attached hereto and incorporated herein by reference. Exhibit C will be filed with this Court under seal. A non-redacted version of this motion also will be filed under seal.

-8-

Wi-LAN's current position, that it should receive a royalty regardless of whether a product infringes the '402 Patent, is contrary to this intent and therefore an inappropriate interpretation. See Metropolitan Life Ins. Co. v. RJR Nabisco, 906 F.2d 884, 889 (2nd Cir.1990) ("In a contract action, the court's general objective should be to give effect to the intentions of the parties in entering into the agreements").

### 4. Section 3.6 of the License Agreement Does Not Create an Independent Basis to Assess Royalties

Wi-LAN incorrectly suggests that Section 3.6 of the License Agreement creates a separate requirement for Hon Hai to pay royalties on the specific models identified in Appendix A. See D.E. 18 at 4. Section 3.6 expressly states that the model listed in Appendix A is "a complete list of [Hon Hai]'s *V-Chip Receivers*," which were for sale at the time. D.E. 8 at §3.6 (emphasis added). Since it has become clear, in light of the Wi-LAN v. LG Elecs. litigation[5], that neither the single model identified in Appendix A nor any other television receivers sold by Hon Hai meet the definition of V-Chip Receiver, Section 3.6 does not require a payment of royalties unless products are independently shown to infringe the '402 Patent. Since Section 3.6 is premised on models that meet the definition of "V-Chip Receiver" (from Section 1.1 of the license agreement), each of the arguments raised by Hon Hai against remand apply equally to Wi-LAN's arguments based on Section 3.6.

## B. Even Under Wi-LAN's Interpretation, a Substantial Question of Federal Law Remains

Even if the Court were to credit Wi-LAN's rewriting of the V-Chip Agreement, removal still would be proper because Wi-LAN's claim would have a federal question as a necessary

---

[5] The Federal Circuit affirmed (without opinion) the district court's finding that the alleged "V-Chip Receivers" sold by LG Electronics did not infringe the '402 Patent. Wi-LAN v. LG Elecs., Appeal No. 2012-1273, Judgement (Fed. Cir. Dec. 11, 2012).

element. While the Court would not have to determine patent infringement under Wi-LAN's interpretation of the V-Chip Agreement, it still would need to determine whether any Hon Hai products "block[]programming in accordance with 47 CFR 15.120(e), as amended." In other words, Wi-LAN's alternative construction of the V-Chip Agreement trades one federal question (compliance with the patent laws) for another federal question (compliance with FCC regulations). Just as those license agreements where the parties chose to define the royalty base by reference to the scope of a federal patent were properly heard in federal court, see Kleinerman, 107 F.Supp. 2d at 124 and Regents of the Univ. of Minn., 58 F.Supp. 2d at 1038, so too is it proper for a federal court to hear a dispute where the license agreement defines the royalty base by reference to the scope of a federal regulation.

A federal question is presented when "the vindication of a right under state law necessarily turned on some construction of federal law." See Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). Here, the Court would be required to determine what constituted "blocking programming in accordance with 47 CFR 15.120(e)." Congress has made clear that it intends FCC regulations to preempt state law. See e.g., City of New York v. Fed. Communications Commission, 486 U.S. 57, 69 (1988). Allowing the federal courts to hear cases that turn upon compliance with those regulations therefore does not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005); see also id. at 318 (a lack of preemption was important in finding no federal question in Merrell Dow).

Thus, even under Wi-LAN's alleged definition of V-Chip Receiver, the Court still would need to determine a question of federal law as a necessary element of Wi-LAN's breach of contract claim, and therefore subject matter jurisdiction in this Court is appropriate.

## V. An Award of Fees and Costs Is Inappropriate

If this Court disagreed with all of these arguments, an award of fees would be improper. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (U.S. 2005). Given that Hon Hai's removal of this action is based upon a literal reading of the language of the V-Chip Agreement, while Wi-LAN must reinterpret the word "and" to avoid federal jurisdiction, it cannot be said that Hon Hai lacked an objectively reasonable basis for believing that patent infringement is a necessary component of Wi-LAN's breach of contract claim. Since Hon Hai had a reasonable basis to remove this case to federal court, fees should be denied. Of course, not only is Hon Hai's basis reasonable, it is correct.

## VI. Conclusion

When the entirety of the License Agreement is considered, rather than just selective quotations on which Wi-LAN relies, it becomes apparent that royalties are due only on products that, inter alia, "utilize[] any aspect of, or the use of which is within the scope of, the ['402] Patent." This is entirely consistent with the purpose of a patent license, which is to free a party from claims of infringement. Since a determination of infringement is therefore a necessary part of Wi-LAN's claim of breach of the License Agreement, federal jurisdiction exists and the case should not be remanded to state court.

Case No. 12-62097-CIV-DIMITROULEAS/SNOW

| | |
|---|---|
| Dated:  December 20, 2012 | Respectfully submitted, |

                                                                       GOODWIN PROCTER LLP
Peter J. Wied*
pwied@goodwinprocter.com
601 South Figueroa Street, 41st Floor
Los Angeles, California  90017
Telephone:  (213) 426-2638
Facsimile:   (213) 623-1673
*Admitted pro hac vice*

ASTIGARRAGA DAVIS MULLINS
   & GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida  33131
Telephone: (305) 372-8282
Facsimile:  (305) 372-8202

By: */s/ Edward M. Mullins*
    Edward M. Mullins, Esq. (Fla. Bar No. 863920)
    emullins@astidavis.com
    Jenelle E. La Chuisa (Fla. Bar No. 539988)
    lachuisa@astidavis.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 20, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on the Service List by some authorized manner for counsel or parties who are not authorized to receive Notice of Electronic Filing.

By: */s/Edward M. Mullins*
    Edward M. Mullins, Esq. (Fla. Bar No. 863920)

Case No. 12-62097-CIV-DIMITROULEAS/SNOW

# SERVICE LIST
*Wi-Lan International Taiwan, Inc. v. Hon Hai Precision Industry Co. Ltd.*
Case No.: 12-cv-62097-DIMITROULEAS/SNOW
United States District Court, Southern District of Florida

| *Counsel for Plaintiff* | *Of Counsel for Plaintiff* |
|---|---|
| Jay B. Shapiro<br>jshapiro@stearnsweaver.com<br>Samuel O. Patmore<br>spatmore@stearnsweaver.com<br>STEARNS WEAVER MILLER WEISSLER<br>  ALHADEFF & SITTERSON, P.A.<br>Museum Tower, Suite 2200<br>150 West Flagler Street<br>Miami, Florida  33130<br>Telephone:  (305) 789-3200<br>Facsimile:  (305) 789-3395<br><br>Electronically served via CM/ECF | Constance S. Huttner*<br>chuttner@velaw.com<br>Clifford Thau<br>cthau@velaw.com<br>Stephanie Lollo Donahue*<br>sdonahue@velaw.com<br>VINSON & ELKINS L.L.P.<br>666 Fifth Avenue, 26thFloor<br>New York, New York  10103<br>Telephone:  (212) 237-0000<br>Facsimile:   (212) 237-0100<br>*\*Admitted pro hac vice*<br><br>Electronically served via CM/ECF |